## LANDLORD AND TENANT.

(Lucas Circuit Court, February 27, 1896.]

†DANIELS V. THE LION DRY GOODS CO.

CONSTRUCTION OF LEASE—RENTAL UNDER PROVISION FOR REAPPRAISAL.

A lease of real property for the term of thirty years, provided for the payment of an annual rent quarterly in advance, and also provided that the rental might be changed at the end of each period of five years, by reappraisement of the property, to be called for by either party at any time within one year after the expiration of said period of five years, and that such reappraisement should determine the basis of the rent for the succeeding period of five years. At the expiration of one of the five-year periods and within the year stipulated in the lease, the parties proceeded under the terms of the lease to reappraise the property, by which reappraisement the annual rental was increased for the succeeding period of five years. At the time of such reappraisement the rental for the current year had been paid by the tenant promptly on the first of each quarter and accepted by the landlord. In an action brought for the difference of the rent for that year, *held*, that the action could be maintained; that under the lease the landlord was entitled to recover the difference of rental as fixed by the reappraisement, although the amount as fixed and paid for the previous period of five years had been paid for that year.

KING, J.

This is a proceeding to reverse the judgment of the court of common pleas. The action was brought by the plaintiff in error in the court below to recover a certain sum of money—$560—from the defendant, which was claimed to be due as balance of rental of certain property situated here in Toledo, from the 1st day of April, 1893, to the 1st day of April, 1894, and a judgment was rendered for the defendant. The claim for that rent arose in this way: In 1868, the owner of that property, but not the plaintiff, made a lease of it to another, who is not the defendant here, from the 1st day of April, 1868, to the 1st day of April, 1893, and sometime during its continuance it was agreed that the lease should be extended ten years, which would be until the year 1903. The lease contained a provision that either party might, at the end of each of the five year periods of the lease, call for a reappraisement of the property. The rental called for in the original lease was $1960, and it was agreed in the lease that after the expiration of five years either party might call for a reappraisement, and so at the end of each five year period during the continuance of the lease; and if the reappraisement of the property showed a valuation thereof which, at 7 per cent, should exceed $1960, then the same should be the rental for the succeeding period of five years, which should be paid in the same manner as the original rental was to be paid, which was quarterly in advance. The parties and their successors in interest and title continued on under the lease, with it in full force, and no reappraisement was called for until 1887, when one was had, and estab-

†Affirmed on grounds stated in 5 Circ. Dec., 163; no further report, 58 O. S., 702.

lished the value of the property so that 7 per cent upon it made the sum of $2240 as rental. That so continued during that period of five years, and in 1888 there was another appraisement, which did not change the valuation, so that the rental continued at $2240 for that period of five years, which, under the terms of the lease, expired on the 1st day of April, 1893, when another period of five years began. From the 1st day of April, 1893, to the 1st day of April, 1894, the rental was paid according to the terms of the lease on the first day of each quarter, or about that time. For instance on the 1st day of April, 1893, there was paid one-quarter of the sum of $2,240, and on the 1st day of July a second quarter's rent was paid. In March, 1894, there was a demand made by the plaintiff for a reappraisement of the property, and the reappraisement was had, and it fixed the valuation of the property at $40,000, and 7 per cent of that sum would make $2,800, which would make each quarter's rent somewhat larger than the previous quarter, and it would make it for a year $560 greater than it had been during the previous period of five years. This appraisement not being made until March, or the 1st of April, 1894, the first year of the period of five had elapsed and the rent had been paid promptly according to the terms of the lease, and of course upon the basis of $2,240. After the appraisement of the property was made, there was no dispute between the parties that the rental was $2,800 a year, and it has since been paid on that basis. But the plaintiff claims that she was entitled to recover for the difference—$560—for the year during which the tenant had paid $2,240, he having paid that while the original lease was in force, and before any appraisement was actually made. The lease on that subject is as follows:

"At the end of each and every five years during said term, there shall be, if either of the parties so desire, an appraisement of the then cash value said demised premises by three disinterested freeholders resident of the city of Toledo, one of whom shall be selected by the party of the first part, one by the parties of the second part, and the other by the two so selected, and if 7 per cent upon the amount of such appraised value shall exceed the sum of $1,960, the rent to be paid for the succeeding five years shall be a sum equal to 7 per cent upon such appraised value, but in no event shall the annual rent be less than said sum of $1,960. If either of said parties shall elect to have such appraisement made, he or they shall within one year after the expiration of any term of five years give notice to the other party in writing that he has or they have made such selection, and at the same time notify the other party of the person selected by him or them to make such appraisement, and thereupon such other party shall within ten days after receiving such notice select the person to act as appraiser upon his or their selection, and the two so selected shall thereupon proceed to select the third appraiser and make their appraisal of such premises, which shall be returned to the parties under their hands in writing within ten days thereafter. If neither of the parties shall within one year after the expiration of any five years of the term give notice of his or their election to have said appraisement the rent for the succeeding five years shall continue the same as that of the five years next preceding."

It is claimed by the defendant that the acquiescence of the parties in the lease as it existed for the five years from April 1, 1888, to April 1, 1893, and the payment of the rent by the one and its acceptance by the other for the year following which would be the first year of the

Daniels v. The Lion Dry Goods Co.

next succeeding period of five, amounted upon the part of the plaintiff to a waiver of the right to demand additional rent, and upon the part of both to an acquiescence in the conditions as they then existed; so that the payment of rent by the one and its acceptance by the other, without any other agreement or arrangement, would prevent the bringing of an action to recover rent for and during the period for which the rent had been paid under the terms of the lease as it then, and had, for the preceding five years, existed.

That is the claim. I shall not elaborate it, nor the claim that is based upon it; but in the opinion of a majority of the court. that claim can hardly be sustained under the terms of this lease.

So far as the question of waiver is concerned, I need only say that neither party could waive that which he had a right to insist upon during a period of a year. This lease gave to either of these parties the right to demand a reappraisement at any time during the year, and the right to have that reappraisement was as good upon tne last day of the year as it was upon the first; and to wait until the latter end of this period was by no means a waiver, since either party might avail himself of the conditions of the lease and call for a reappraisement. It is said that that was not reciprocal. So far as the first appraisement is concerned, it was not, because the conditions of the lease provided that the rental could not be reduced below $1960; but at the date of the appraisement in question it might have been reduced below the existing rate, since the existing rental was $2240, and either party might have well demanded a reappraisement at any time. I cannot say that either waived the right to do so by waiting until the end of the year, or to nearly the close of the year. The plaintif waited until sometime in March, and then proceeded to give the notice required by the lease, and in and upon the terms indicated in the lease. It was acted upon by the tenant, who at once appointed the appraiser required by it, and they two selected the third. The appraisement was had, and it was returned under their hands to the parties, and thereafter was abided by.

The condition of the written contract is that that appraisement so made should be the rental of this property for the period of five years next succeeding the preceding period. If that language is to have or to be given any effect, that period of five years commenced when the preceding period ended; and to say that one year of that period is dropped out because neither of the parties availed themselves of their right to a reappraisement until at or near the close of the time within which, by the contract they are given the express right to demand it, is, in my judgment, overturning the express provisions of the written contract, and without any other contract in its. place. For it is conceded that neither of these parties did any other thing in this matter than simply to await the time as it passed by—the one to pay rent according to the existing rate as established by the contract and the other to receive it. Beyond that they did nothing. That does not seem to us to be a waiver of the right to pursue the terms of the written contract and demand a reappraisement, and demand it any time within the time named in the contract. If they did, the contract says such reappraisement shall be the basis of the rental of the property for the period of five years, and could not thereafter be changed, under this lease, until that five years had elapsed, and then there can be another appraisement: That being so, we see no objection to the bringing of this action by the plaintiff.

Nor do I think. personally, that had there been a reduction of the rent by this appraisement, there would be any valid objection to an action by the lesee for the excess paid on this rent, as for money had and received. It is true he would have paid it according to the then existing terms of the contract; but there was a condition impliedly affecting that payment, and which might render it inoperative as a full payment and liquidation between the parties, and that was, that neither party should within that year, demand a reappraisement, and that such reappraisement would not change tne amount of the rent for year. That was the implied condition connected with the payment of rent during that year. For these reasons we think this judgment should be reversed.

All the oral testimony was ruled out, and there is no testimony in the case except the receipts. There is no dispute as to the facts. So this case is really before us on the pleadings. We are of the opinion that this court should render the judgment which the court of common pleas ought to have rendered in the case. We will therefor render a judgment for the plaintiff for the amount claimed, with interest.

SCRIBNER, J.

I am unable to concur with the judgment just pronounced in the proceeding.

The tenant occupied the premises in question under a written agreement entered into between the parties, by which it was distinctly provided what should be the respective rights of the parties, the landlord and the tenant. The premises to be occupied were fixed by the terms of the written agreement between them, the amount of the rent to be paid was fixed and determined, and the time when payment should be made was fixed and determined. There was a full, perfect, and complete agreement between these parties, by which their respective rights and liabilities were ascertained, fixed and determined. Under those stipulations these premises were occupied by the tenant, and the rent as it became due was paid and accepted down to the last quarter's rent for the current year, ending either in March or April, 1894. Had the landlady during that period insisted upon the payment of the rent stipulated, there was no earthly means of resisting the claim as made by her. It was an absolute impossibility for the tenant to escape the payment of the amount agreed upon. Had the tenant objected to payment, it was in the power and it was the right of the landlady to enforce payment by proceedings at law, and judgment and execution would necessarily have followed.

It is true there existed between these parties a written agreement by the terms of which this landlady might have insisted upon a reapraisement of these premises and thereby ascertained, fixed, and determined whether or not she was entitled to an increased amount of rent; and had she asserted this right upon her part, and demanded the appraisement stipulated for, before she had acquired or accepted payment of rent as then stipulated for according to the terms of the agreement, there could be no question about her right to insist upon the appraisement, and upon payment according to the terms reached and fixed by the appraisement. But I fail to see that this lady, or any other person under similar circumstances, could lie by, demand, enforce, and receive payment according to the terms of this lease during the period of an entire year ending in March, 1894, and having received the rent—having availed herself of the stipulation as it then existed, afterwards, upon a new appraisement fixing an amount increasing her rent, bring a suit to recover

Daniels v. The Lion Dry Goods Co.

for the increased amount. I think it is contrary to practice to attempt to enforce a claim of that kind. It seems to me that good faith towards the tenant would have required a different course of conduct under these circumstances.

Had this landlady notified the tenant before receiving payment of the rent that she, under the terms of this agreement for a re-appraisement, insisted upon a reappraisment, of course it would have been her right to do that; but, in my judgment, if she proposed to avail herself of that stipulation during the current year, she was bound to insist upon it, she was bound to assert it, before she demanded or received the rent as fixed according to the stipulation. As I have said, upon payment of rent being demanded by her, the tenant could not then question her claim for rent; it was absolutely impossible. So that really, as the case stood, it was a case of "Heads, I win; tails you lose," in the matter of fixing the amount of the rent. Hence it is, in my judgment, that the conclusion reached by the court of common pleas passing upon this case was right, and the judgment pronounced by that court should not be disturbed.

Here the entire year's rent has been received as stipulated between the parties. *Non constat* this plaintiff might never insist upon the right to have a re-appraisement of these premises. She makes application through her agent, perhaps, for the rent. The tenant has no way of availing himself of any defense, and he pays it. Then afterwards she comes in and says she wants more rent. And upon what ground does she want more rent? Why, upon the ground that after she had received the tenant's rent according to the stipulation between them, after she had accepted it, then she had concluded that she would have a reappraisement and make a further demand for rent. And technically, I cannot see how she can enforce, under these circumstances, a stipulation of this kind. She receives all the rent that is due at the time it is paid and at the time it may be demanded, and the amount is increased by a reappraisement, as is claimed. Then what? Why, she resorts to what is equivalent to an action to recover a further installment of rent fixed and determined upon after the tenant had paid the stipulated amount agreed upon. I don't think it is reasonable or consonant with the rules of law to enforce a liability of that kind. I do not question the right of the landlord as to subsequent accretions of rent to insist upon the full amount under the new valuation, but what I object to is, that while the year is going forward, and the rent is paid according to the contract as it exists, according to the only terms that could be insisted upon at that time by either party, if afterwards there is an increased valuation put upon the property so as to increase the rent, that the amount of rent claimed or recovered should be limited to that which had accrued after the landlord had demanded the reappraisement and had the new rental fixed.

For these reasons in brief, I think that the judgment of the court of common pleas should be affirmed.